UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

HARTFORD UNDERWRITERS
INSURANCE COMPANY,

        Plaintiff,

v.

WBY, INC. D/B/A FOLLIES,

        Defendant.

CIVIL ACTION FILE
NO. 1:18-cv-00258-MHC

## MOTION TO REASSIGN CASE PURSUANT TO RULE 905-2 AND MEMORANDUM OF LAW IN SUPPORT

Plaintiff Hartford Underwriters Insurance Company ("Travelers") moves for this case to be reassigned under Rule 905-2 of the Internal Operating Procedures for the Northern District of Georgia ("Rule 905-2") because it is related to three actions currently before Judge Michael L. Brown involving similar factual issues and a common defendant, WBY, Inc. d/b/a Follies ("WBY").  The actions before Judge Brown involve claimed violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), due to WBY's characterization of its entertainers and waitstaff as independent contractors instead of employees.  Similarly, one of the issues in this case concerns WBY's characterization of the identical

individuals, in addition to DJ's, as independent contractors instead of employees for purposes of calculating premiums due under its workers compensation insurance policy.  For the reasons provided, this case should be reassigned to Judge Brown pursuant to Rule 905-2.

## I.     FACTUAL BACKGROUND

WBY owns and operates an adult entertainment establishment known as Follies that employs dancers as entertainers.  (Compl., ¶ 6.)   Follies employs clerical workers, waitresses, bartenders, and entertainers.   (*Id.* at ¶ 7.)   In connection with its operation of Follies, WBY obtained Workers Compensation and Employers Liability Insurance Policy No. 6S60UB-7H91983-5-17 (the "Policy") with Travelers.  The Policy ran from February 21, 2017 until February 21, 2018.  (*Id.* at ¶ 8.)[1]

Under the Policy, premiums are determined by Travelers's manual of rules, rates, rating plans and classifications.  (*Id.* at ¶ 9.)  The Policy provides a rate and premium basis for business or work classifications based on an estimate of the exposures WBY would have during the policy period.  (*Id.* at ¶ 10.)  If WBY's actual exposures are not properly described by those classifications, Travelers is

---

[1] A true and correct copy of the Policy is attached to the Complaint as Exhibit 1.

entitled to assign proper classifications, rates and premium bases by endorsement. (*Id.* at ¶ 11.)

The premium for each work classification is determined by multiplying a rate times a premium basis. The "premium basis" includes payroll and all other remuneration paid or payable during the policy period for the services of all of WBY's officers and employees engaged in work covered by the Policy and all other persons engaged in work that could make Travelers liable under Part One of the Policy. (*Id.* at ¶ 12.) WBY is obligated to pay its premium when due. (*Id.* at ¶ 13.) The Policy states that the final premium will be determined after the Policy ends by using the actual, not the estimated, premium basis and the proper classification and rates that lawfully apply to the business and work covered by the Policy. (*Id.* at ¶ 15.) At the end of the term of the Policy, if the final premium is more than the estimated premium, WBY must pay the balance. (*Id.* at ¶ 16.)

The Information Page of the Policy ("Information Page") identified two types of employees: "Clerical Office Employees" ("Clerical Employees") and "Bar, Discotheque, Lounge, Nightclub or Tavern" employees ("Bar Employees"). The initial estimated total remuneration for the Clerical Employees was $109,100 with a multiplier of 0.48 and an estimated annual premium of $524. The initial estimated total remuneration for Bar Employees was $958,129 with a multiplier of

6.18 and an estimated annual premium of $59,212.  Based on the formula used by Travelers, the initial total estimated premium was $49,398.  (*Id.* at ¶ 20.)[2]

In July 2017, Travelers conducted a preliminary audit and determined that WBY had underpaid its premiums based on an estimated payroll from July 1, 2016 until June 30, 2017 of $154,000 for Clerical Employees and $3,275,337 for Bar Employees.  Based on the revised estimated annual payroll, WBY's total estimated premium increased from $49,398 to $167,555, an increase of $118,157.  After the modification to the premium, the deposit amount due from WBY was $167,555.  (*Id.* at ¶ 21; *see* July 25, 2017 Change Document, Schedule 1.)[3]

WBY's "Entertainers", "Waitstaff", and "DJ's" could be found to be employees, as defined under the Georgia Workers Compensation Act, O.C.G.A. § 34-9-1 *et seq.*, meaning there is a potential to pay a workers' compensation claim brought against WBY.  (Compl., ¶ 22.)   Travelers concluded that Follies' entertainers, waitstaff and DJ's could be found to be WBY's employees after looking at whether WBY had the right to direct and control the entertainers, waitstaff, and DJ's and the relative nature of their work.  (*Id.* at ¶ 23.)  Travelers also concluded after a review of all relevant facts that the entertainers, waitstaff,

---

[2] A true and correct copy of the Information Page is attached to the Complaint as Exhibit 2.

[3] A true and correct copy of the Change Document is attached to the Complaint as Exhibit 3.

and DJ's were all engaged in work that could make it liable under the Policy because of the relative nature of the work and therefore their estimated payroll should be included in the premium calculation under the Policy. (*Id.* at ¶ 24.) Although WBY paid an amount equal to the initial estimate for the premium ($49,398), WBY has failed to pay the remaining $118,157. (*Id.* at ¶ 26.)

On January 18, 2018, Travelers filed its Complaint and Demand for Jury Trial ("Complaint"), commencing the above-referenced action. [Doc. 1.] In its Complaint, Travelers has asserted claims for breach of contract, suit on open account, quantum meruit, and attorney's fees. On March 1, 2018, WBY filed its Answer, Affirmative Defenses and Counterclaim to Travelers's Complaint (the "Answer" and the "Counterclaim"). [Doc. 10.] In its Counterclaim, WBY has asserted claims for breach of contract, declaratory judgment, and attorney's fees.[4]

## II.   ARUGMENT AND CITATION TO LEGAL AUTHORITY

### A.   Legal Standard for Reassigning a Case

Requests to reassign cases in Georgia are governed by the Court's Internal Operating Procedures, which provides that "related cases shall be assigned to the same judge." Rule 905-2(a), Internal Operating Procedures, N.D. Ga.

---

[4] On April 5, 2018, Hartford moved to dismiss Count I (breach of contract) and Count III (attorney's fees) of WBY's Counterclaim, which is currently pending before the Court. [Doc. 16.]

For purposes of reassignment, "cases are related whenever the later-filed case involves . . . [t]he same issue of fact or arises out of the same event or transaction included in an earlier numbered pending suit." *Id.* at Rule 905-2(a)(2). "This rule, however, does not require that the two cases be identical in every respect, only 'substantially the same.'" *Jimenez v. Wellstar Health Sys.*, No. 1:09-CV-620-MHS, 2010 U.S. Dist. LEXIS 150847, *3 (N.D. Ga. Jan. 7, 2010)

### B.   This Action is Related to Three Pending Actions in Front of District Court Judge Michael L. Brown

This action should be reassigned under Rule 905-2(a) because the case is related to three pending actions in the Northern District of Georgia that are currently in front of Judge Brown: (1) *Latoya Becton et al. v. WBY, Inc. d/b/a Follies et al.*, No. 16-CV-4003-MLB ("*Becton* Case"); (2) *Constance Smith et al. v. WBY, Inc. d/b/a Follies et al.*, No. 16-CV-04017-MLB ("*Smith* Case"); and (3) *Brezzy Hurst v. WBY, Inc. d/b/a Follies et al.*, No. 15-cv-3560-MLB ("*Hurst* Case" and collectively, the "Related Cases").

Follies is the defendant in all three of the Related Cases. Although Travelers is not a party to the Related Cases, they each involve a common issue of fact: whether Follies' entertainers are employees or independent contractors. In *Hurst*, Brezzy Hurst, a former entertainer at Follies, filed a lawsuit alleging that she was

an employee of Follies and, as such, Follies failed to pay her a minimum wage under the FLSA. (*See Hurst* Case, Second Am. Compl., Doc. 29, ¶ 79.) Similarly, the plaintiffs in the *Smith* Case, Constance Smith and Courtney Ellington, were waitresses at Follies who alleged that they were "employees" under the FLSA, 29 U.S.C. § 203(e). (*See Smith* Case, First Am. Compl., Doc. 17, ¶¶ 8, 9, 18, 28.) As such, the plaintiffs in the *Smith* Case contend that they are entitled to minimum wage protections under the FLSA and have specifically sought a determination that "Defendants are 'employers' and plaintiffs are 'employees' as that term is defined under the FLSA." (*Id.*, Wherefore Cl. (a).)

Finally, the *Becton* Case involves 44 plaintiffs who are current and former entertainers at Follies. The plaintiffs in the *Becton* Case allege that Follies "misclassified [them] as independent contractors and failed to pay them minimum and overtime wages required by the FLSA." (*Becton* Case, Compl., Doc. 22, ¶¶ 1, 11.) In *Becton,* the plaintiffs also allege that they each "qualified as an employee under 29 U.S.C. § 203(e)." (*Id.* at ¶ 8.) Additionally, the *Becton* plaintiffs allege in their complaint numerous factual allegations that, if proven, would have a direct bearing on the legal issues in this action. Specifically, the *Becton* plaintiffs allege they were "employees" rather than independent contractors "as a matter of economic realty" because Follies "controlled each entertainers' work schedules;"

"would not allow entertainers to leave the premises without permission;" "monitored the entertainers dress and appearance, had the authority to require dancers to change their appearance and attire at work and required dancers to change their appearance and attire at work when they deemed it appropriate;" "had the authority to suspend and discipline dancers for violation of its rules;" "supervised dancers on a day-to-day basis;" "required dancers to attend meetings;" "had the discretion not to permit a dancer to perform;" gave "dancers instructions to remove clothing while on stage, and called dancers to dance on stage on a set rotation established by the Club;" "decided which music to play at the Club;" "determined where an entertainer could dance and what she could charge for the dance;" "set rates for VIP rooms;" "enforced a mandatory check-out process for the Club's dancers;" "did not require the Club's dancers to have prior experience as dancers or any formal or special training;" and "made all decisions regarding the hiring, firing or disciplining of entertainers and waitresses." (*See generally id.* at ¶¶ 16-45.)  As such, the *Becton* plaintiffs seek minimum wage protections and payment of overtime wages under the FLSA, 29 U.S.C. §§ 206, 207.  (*Id.* at ¶¶ 58-74.)

## C. Both the FLSA and the Georgia Workers Compensation Act Use Similar Criteria to Establish Whether a Worker is an Employee

Although the Related Cases arise under the FLSA whereas one issue in this action involves the Georgia Workers Compensation Act, both statutes classify "employees" using similar criteria. The FLSA defines an employee as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). The FLSA also defines "to employ" as "to suffer or permit to work," *id.* at § 203(g), and an "employer" as "any person acting . . . in the interest of an employer in relation to an employee." *Id.* at § 203(d).

In assessing whether a worker is an employee under the FLSA, both the Supreme Court and the Eleventh Circuit Court of Appeals have explained that courts must determine whether, "as a matter of 'economic realit[y],' an individual is an employee or an independent contractor in business for himself." *Freund v. Hi-Tech Satellite, Inc.*, 185 Fed. Appx. 782, 782 (11th Cir. 2006) (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728 (1947). The Eleventh Circuit has identified the following factors as part of an "economic reality" test:

1) The nature and degree of an alleged employer's control as to the manner in which the work is to be performed;
2) The alleged employee's opportunity for profit or loss depending upon his managerial skill;

3) The alleged employee's investment in equipment or materials required for his task, or his employment of workers;
4) Whether the service rendered requires a special skill;
5) The degree of permanency and duration of the working relationship; [and]
6) The extent to which the service rendered is an integral part of the alleged employer's business.

*Id.* at 783 (quoting *Sec. of Labor v. Lauritzen*, 835 F.2d 1529, 1535 (7th Cir. 1987)).

These factors are substantially the same as those factors that are used to define an employee under the Georgia Workers Compensation Act.  The relevant statute provides that an employee "means every person in the service of another under any contract of hire or apprenticeship, written or implied, except a person whose employment is not in the usual course of the trade, business, occupation, or profession of the employer."  O.C.G.A. § 34-9-1(2).  The definition of "employee" under the Georgia Workers Compensation Act is further constrained by O.C.G.A. § 34-9-2, which provides:

A person or entity shall otherwise qualify as an independent contractor and not an employee if such person or entity meets all of the following criteria:

1)    Is a party to a contract, written or implied, which intends to create an independent contractor relationship;
2)    Has the right to exercise control over the time, manner, and method of the work to be performed; and

-10-

> 3)   Is paid on a set price per job or a per unit basis, rather than on a salary or hourly basis.
>
> A person who does not meet all of the above listed criteria shall be considered an employee unless otherwise determined by an administrative law judge to be an independent contractor.

*Id.* at § 34-9-2(e).  All three requirements under the statute must be satisfied for a worker to be considered an "independent contractor" under the Georgia Workers Compensation Act.  *Id.*

### D.   Determining Whether the Entertainers, DJ's, and Waitstaff are Employees is an Issue in both this Action and the Related Cases

One issue in this action is whether WBY's entertainers, DJ's and waitstaff are employees or independent contractors.  In WBY's Answer, it denied that it employed the entertainers who work at Follies and that the entertainers, DJ's, and some of the waitstaff are employees as defined under the Georgia Workers Compensation Act.  (Answer, ¶¶ 7, 22.)  WBY has also denied that it directed and controlled the entertainers and DJ's or that they were employees based upon the relative nature of their work.  (*Id.* at ¶ 23.)  Because WBY does not believe the entertainers and DJ's are employees, it does not believe they are "engaged in work that could make [Travelers] liable under the Policy."  (*Id.* at ¶¶ 24-25.)

In WBY's Counterclaim, it further emphasizes the distinction between employees and independent contractors under the Georgia Workers Compensation Act in this litigation by alleging that the entertainers are independent contractors rather than WBY's employees.  (Countercl., ¶ 21.)  This distinction serves as the basis for WBY's claim for breach of contract.  (*Id.* at Count I, ¶¶ 6-7.)  WBY also acknowledged that "[a]n actual controversy exists between the parties regarding whether the entertainers who perform at the Follies are WBY's employees or are independent contractors for purposes of determining the amount of premium due for the [Policy]."  (*Id.* at Count II, ¶ 11.)  Consequently, WBY is seeking a declaratory judgment that "the entertainers are independent contractors based on the independent contractor agreements they sign, as well as Georgia Workers Compensation law."  (*Id.* at Count II, ¶ 12.)

One factor in dispute between the parties is whether the entertainers, DJ's, and some waitstaff have "the right to exercise control over the time, manner, and method of the work to be performed."  O.C.G.A. § 34-9-2(e)(2).  This question is identical to several of the factors that define employees under the FLSA, including "[t]he nature and degree of an alleged employer's control as to the manner in which the work is to be performed," "[t]he alleged employee's investment in equipment or materials required for his task, or his employment of workers," "[t]he

-12-

degree of permanency and duration of the working relationship," and "[t]he extent to which the service rendered is an integral part of the alleged employer's business." *Freund*, 185 Fed. Appx. at 783.  Stated more succinctly, should the plaintiffs in the Related Cases establish the factors needed to classify the entertainers and waitstaff as employees under the FLSA, they could not be classified as independent contractors under the Georgia Workers Compensation Act.

Courts in Georgia have previously used decisions under the FLSA as persuasive authority when determining that an adult entertainer was an employee under the Georgia Workers Compensation Act.   In *Auto-Owners Insurance Company v. The Great American Dream*, State Court of Fulton County, Case No. 13VS196719D (May 6, 2016), the court decided the plaintiff insurance company's motion for partial summary judgment on the question of whether additional premiums were owed under a worker's compensation insurance policy based on whether exotic dancers were employees rather than independent contractors at Pin Ups', an Atlanta strip club.  (*See* Order Granting Pl.'s Mot. for Partial Summ. J. and Pl.'s Mot. to Dismiss Countercl. For Failure to Exhaust Administrative Remedies, a true and correct copy of which is attached hereto as <u>Exhibit 1</u>, p. 1.) In granting the plaintiff's motion for partial summary judgment that the court "hold

-13-

as a matter of law that the dancers are 'employees' under O.C.G.A. § 34-9-2(e)(2) instead of independent contractors," the court acknowledged the plaintiff's emphasis on the fact that "a federal court has held that Pin Ups' dancers are employees under the Fair Labor Standards Act." (*Id.* at p. 2 (quoting *Stevenson v. The Great Am. Dream, Inc.*, No. 1:12-CV-3359-TWT, 2013 U.S. Dist. LEXIS 181551, *9-*17 (N.D. Ga. Dec. 31, 2013)).

Conversely, courts in other states have used judicial analyses of whether a worker was an employer under a state workers compensation law to make a determination under the FLSA. *See French v. La. Cleaning Sys.*, No. 16-227, 2016 U.S. Dist. LEXIS 77933, at *6 n.4 (E.D. La. June 14, 2016) (stating decision under Louisiana workers compensation statute was "well-reasoned, thorough, and persuasive" in determining whether worker was employee under FLSA); *Hageman v. Park W. Gardens*, 480 N.W.2d 223, 230-31, 1992 N.D. LEXIS 17, *24 (N.D. 1992) (citing case decided under North Dakota workers compensation statute to evaluate whether worker was "integral part of business" for purposes of FLSA economic realty analysis).

One factor the court must look at to assess whether the entertainers, DJ's, and some waitstaff are employees or independent contractors, whether they have "the right to exercise control over the time, manner, and method of the work to be

performed," O.C.G.A. § 34-9-2(e)(2), is already being addressed by Judge Michael

Brown in the Related Cases to determine whether the entertainers and wait staff are

employees under the FLSA.  As such, this action is related to the Related Cases

because "[t]he same issue of fact arises out of the same event or transaction."  Rule

905-2(a), Internal Operating Procedures, N.D. Ga.   The factual issues raised

addressing whether the entertainers and wait staff have "the right to exercise

control over the time, manner, and method of the work to be performed," are not

merely similar but are identical to certain of the factual allegations that have been

alleged in the Related Cases.  (*See Becton* Case, Compl., Doc. 22, ¶¶ 16-45.)

Additionally, the events and transactions in question are identical, not merely

similar.  Therefore, this action should be reassigned to Judge Brown pursuant to

Rule 905-2(a) of the Internal Operating Procedures for the Northern District of

Georgia.

### E.   Reassigning this Action Would Promote Judicial Economy and Avoid Inconsistent Decisions

Reassignment of this action to Judge Brown furthers the purposes of Rule

905-2.  "[T]he main purposes of Rule 905-2 are to promote judicial economy and

achieve uniform results."  *KEG Techs., Inc. v. Laimer*, 1:08-cv-393-JEC, 2008

U.S. Dist. LEXIS 127779, *5 (N.D. Ga. Sep. 9, 2008).  *See also Jimenez*, 2010

U.S. Dist. LEXIS 150847 at *3 ("This rule is obviously intended to promote judicial economy and to avoid unnecessary duplication of effort by having the judge who handled the original case, and is thus familiar with the parties and issues involved, also handle a refiling of substantially the same case.").

Here, reassignment of this action would promote judicial economy because Judge Brown is evaluating dispositive motions filed in all three of the Related Cases and is therefore familiar with many of the factual issues that will be relevant to a resolution of some of the claims in Travelers's Complaint and WBY's Counterclaim.  Because the FLSA and the Georgia Workers Compensation Act look to similar factors in identifying whether a worker is an employee, having the same judge looking at the issues would avoid the risk of inconsistent results.  A ruling by Judge Brown that the entertainers are employees could be dispositive in finding that Travelers is entitled to the premium adjustment requested in this case.

Having said so, Travelers acknowledges that even if Judge Brown finds that the entertainers are <u>not</u> employees, Follies' premium is calculated based on the payroll of not only employees but also "all other person who are engaged in work who *could* make us liable under Part One (Workers Compensation Insurance) of this policy."  Doc. 1-1, p. 11 (emphasis added).) This language applies to individuals who are ***arguably*** employees, i.e., if there is any question as to their

status as employees.  *See e.g., Continental Cas. Co. v. Theraco, Inc*., 437 S.W.3d 841, 855 (Tenn. App. 2014); *Compassionate Care, Inc. v. The Travelers Indem. Co.,* 147 Conn. App. 380, 398-404, 83 A.3d 647, 659-63 (Conn. App. 2013). Travelers believes that the mere fact that the entertainers' status as employees is being litigated in the FLSA matters shows that the increased premium is due.  That issue, however, is best left to Judge Brown to resolve as he is already considering the "employee versus independent contractor" question in the context of the cases assigned previously to him.

For these reasons, "[t]he interests of judicial economy demand that this case be heard by the same judge who has already devoted considerable time and effort to reviewing the facts and issues involved in the case." *Jimenez*, 2010 U.S. Dist. LEXIS 150847 at *4.  Consequently, "the cases are 'substantially the same' for purposes of determining the appropriate judicial assignment" and this case should be reassigned to Judge Brown.  *Id.*

### III.   <u>CONCLUSION</u>

For the reasons set forth herein, Travelers respectfully requests that the Court grant its motion and reassign this action to Judge Michael L. Brown.

Respectfully submitted this 1st day of May, 2018.

**FREEMAN MATHIS & GARY, LLP**

/s/ Matthew M. Weiss
Philip W. Savrin
Georgia Bar No. 627836
psavrin@fmglaw.com
Matthew M. Weiss
Georgia Bar No. 718795
mweiss@fmglaw.com

*Attorneys for Plaintiff Travelers*
*Underwriters Insurance Company*

100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)

## **LOCAL RULE 7.1(D) CERTIFICATE OF COMPLIANCE**

This is to certify that the foregoing has been prepared using Times New Roman 14-point font and is double-spaced.

Respectfully submitted this 1st day of May, 2018.

**FREEMAN MATHIS & GARY, LLP**

*/s/ Matthew M. Weiss*
Philip W. Savrin
Georgia Bar No.627836
psavrin@fmglaw.com
Matthew M. Weiss
Georgia Bar No. 718795
mweiss@fmglaw.com

*Attorneys for Plaintiff Travelers*
*Underwriters Insurance Company*

100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TRAVELERS UNDERWRITERS
INSURANCE COMPANY,

   Plaintiff,

v.

WBY, INC. D/B/A FOLLIES,

   Defendant.

CIVIL ACTION FILE
NO. 1:18-cv-00258-MHC

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day electronically submitted the foregoing MOTION TO RESSIAGN CASE PURSUANT TO RULE 905-2 AND MEMORANDUM OF LAW IN SUPPORT to the Clerk of Court using the CM/ECF system which will automatically send electronic mail notification of such filing to counsel of record who are CM/ECF system participants, and mailed a paper copy of same mailed by the United States Postal Service, first-class postage prepaid, to parties and counsel of record who are non-CM/ECF participants, properly addressed upon:

Brenton W. Vincent, Esq.
Robert Brunner, Esq.
Bryan Cave, LLP
161 N. Clark Street
Suite 4300
Chicago, IL 60601-3206

Eric Schroeder, Esq.
Bryan Cave, LLP
One Atlantic Center, 14th Floor
1201 West Peachtree St., N.W.
Atlanta, GA 30309-3488

    This 1st day of May, 2018.

**FREEMAN MATHIS & GARY, LLP**

*/s/ Matthew M. Weiss*
Matthew M. Weiss
Georgia Bar No. 718795
mweiss@fmglaw.com

*Attorney for Plaintiff Travelers*
*Underwriters Insurance Company*

100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)